UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

(Worcester Division)

| | |
|---|---|
| JOSEPH LIJOI,<br><br>    Plaintiff,<br><br>v.<br><br>TOWN OF LEICESTER, by and Through Its Treasurer, Melanie Jackson;<br>LEICESTER PUBLIC SCHOOLS, by and Through Its Superintendent, Marilyn Tencza;<br>MARILYN TENCZA; and<br>CHRISTOPHER FONTAINE,<br><br>    Defendants. | C.A. NO. 4:21-cv-40114 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS, AND CROSS-MOTION TO VACATE ENTRY OF DEFAULT AND ALLOW DEFENDANTS TO FILE RESPONSIVE PLEADING**

The defendants, Town of Leicester, by and Through Its Treasurer, Melanie Jackson, Leicester Public Schools, by and Through Its Superintendent, Marilyn Tencza, Marilyn Tencza, and Christopher Fontaine, (hereinafter, "defendants"), hereby oppose plaintiff's Motion for Default Judgment Against Defendants.  Further, the defendants move this Honorable Court to vacate or set aside the Default entered against them on December 15, 2021, pursuant to Fed. R. Civ. P. 55(c), and allow seven (7) days from the allowance of the Defendants' Cross-Motion for the defendants to file a Responsive Pleading to plaintiff's Complaint.

100953701

**BACKGROUND**

On November 11, 2021, plaintiff filed his Complaint against Town of Leicester, by and Through Its Treasurer, Melanie Jackson, Leicester Public Schools, by and Through Its Superintendent, Marilyn Tencza, Marilyn Tencza, and Christopher Fontaine.[1] The plaintiff then filed an Amended Complaint on November 16, 2021.[2] The Complaint contains allegations arising out of the alleged termination of teacher, Joseph Lijoi, by the Leicester Public Schools, where he was purportedly supervised by principal Christopher Fontaine. The Amended Complaint includes seven (7) counts:

**COUNT I:** **Violation of 42 U.S.C. § 1983; First Amendment Retaliation - Termination** (against defendants Town of Leicester and Leicester Public Schools)

**COUNT II:** **Violation of 42 U.S.C. § 1983; First Amendment Retaliation – Job Elimination** (against defendants Town of Leicester and Leicester Public Schools)

**COUNT III:** **Defamation** (against defendants Town of Leicester and Leicester Public Schools)

**COUNT IV:** **Violation of 42 U.S.C. § 1983; First Amendment Retaliation – Termination** (against defendants Christopher Fontaine and Marilyn Tencza)

**COUNT V:** **Violation of 42 U.S.C. § 1983; First Amendment Retaliation – Job Elimination** (against defendants Christopher Fontaine and Marilyn Tencza)

**COUNT VI:** **Intentional Interference With Advantageous Business Relationship** (against defendants Christopher Fontaine and Marilyn Tencza)

**COUNT VII: Defamation** (against defendant Christopher Fontaine)

---

[1] See Exhibit A, *Docket*.

[2] See Exhibit A, *Docket*.

100953701

On November 22, 2021, defendants Leicester Public Schools, by and Through Its Superintendent, Marilyn Tencza, Marilyn Tencza, and Christopher Fontaine were allegedly served by delivery in hand to Marilyn Tencza at 3 Washburn Square, Leicester, MA.[3] Town of Leicester, by and Through Its Treasurer, Melanie Jackson, were allegedly served in hand to Elaisa Ayres at 3 Washburn Square, Leicester, MA.[4] Of note, Mr. Fontaine was not served in person nor was he served at his last known address, and the Town of Leicester was not served through its Treasurer, Melanie Jackson.

The deadline for filing a responsive pleading to the Amended Complaint was set for December 13, 2021.[5]

On or about October 21, 2021, the Assistant Town Administrator of Leicester, Kristen Forsberg, notified the Town of Leicester's insurance agent, Joseph Gatchell, of the Braley Wellington Group, that that a demand letter and proposed Complaint had been sent on behalf of the plaintiff.[6] On October 22, 2021, Mr. Gatchell notified Ms. Forsberg that a claim had been set up by the Town's insurer, Argonaut Insurance Company.[7] On October 26, 2021, Robert St. Jean, an adjuster from Sedgwick Claims Management Services, the third-party claims administrator for Argonaut Insurance Company, contacted Ms. Forsberg and acknowledged receipt of the demand letter and possible lawsuit, and informed her that a claim had been set up by Argonaut.[8]

---

[3] See Exhibit B, *Proofs of Service*.
[4] See Exhibit B
[5] See Exhibit A.
[6] See Exhibit C, *Affidavit of David Genereux*, at ¶ 3.
[7] See Exhibit C, *Affidavit of David Genereux*, at ¶ 4.
[8] See Exhibit C, *Affidavit of David Genereux*, at ¶ 5.

100953701

On November 22, 2021, David Genereux, the Town Administrator for the Town of Leicester, received a Summons and Verified Amended Complaint that had allegedly been served on the Leicester Public Schools, Marilyn Tencza, the Superintendent, and Christopher Fontaine, the High School Principal, at 3 Washburn Square, Leicester, Massachusetts, the Leicester Town Hall.[9]  Mr. Genereux asked Ms. Forsberg to forward the Summons and Verified Amended Complaint to Sedgwick, and on the same day, November 22, 2021, Ms. Forsberg forwarded a copy of the Summons and Verified Amended Complaint to a Mr. St. Jean, the adjuster from Sedgwick, for immediate review.[10]

Mr. Genereux, the Town Administrator, believed that the Town's insurance company would be providing defense, assigning counsel, and filing any necessary responsive pleadings on behalf of all of the defendants.  He informed the other defendants, Ms. Tenzca and Mr. Fontaine, that their defense, as well as the defense of Leicester Public Schools, was being handled by the insurance company.[11]

On December 14, 2021, plaintiff filed an Application to Clerk for Entry of Default Against All Defendants, and Default was entered on December 15, 2021.[12]  On the same day, a Standing Order regarding Motions for Default Judgment was entered on the docket, stating that "The defaulting party shall have an opportunity to file an opposition to the motion and to request a hearing…".[13]  The Plaintiff then filed a Motion for Default Judgment on December 15, 2021.  The

---

[9] See Exhibit C, *Affidavit of David Genereux*, at ¶ 1, 6.
[10] See Exhibit C, *Affidavit of David Genereux*, at ¶ 6-7.
[11] See Exhibit C, *Affidavit of David Genereux*, at ¶ 8.
[12] See Exhibit A.
[13] See Exhibit D, *Standing Order regarding Motions for Default Judgment*, at ¶ 4.

100953701

Court scheduled a Hearing on Plaintiff' Motion for Default Judgment to be held on March 15, 2022.

On March 7, 2022, Sedgwick, the third-party administrator for the insurer of the Town of Leicester, retained Gareth Notis and Morrison Mahoney LLP to defend the defendants in this action.[14] Counsel for the defendants moved as expeditiously as possible upon receipt of the assignment to remove the entry of default against the defendants and oppose Plaintiff's Motion for Default Judgment.[15]

## ARGUMENT

Under Fed. R. Civ. P. 55(c), a court may set aside an entry of default for "good cause." "Allowing an entry of default to be set aside on a showing of reasonable justification is in keeping both with the philosophy that actions should ordinarily be resolved on their merits" and with the Federal Rules of Civil Procedure. Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989); See Fed.R.Civ.P. 1 (rules "shall be construed to secure the just ... determination of every action"). Early in a case, such as "when a default has been entered but no judgement proven, a liberal approach is least likely to cause unfair prejudice to the nonmovant or to discommode the court's calendar." Coon, 867 F.2d at 76. In such cases, "a district court should resolve doubts in favor of a party seeking relief from the entry of a default." Id., citing Gross v. Stereo Component Systems, 700 F.2d 120, 122 (3d Cir.1983); United States v. One Parcel of Real Prop. With Bldgs.,

---

[14] See Exhibit E, *Affidavit of Gareth Notis*
[15] See Exhibit E.

Appurtenances, & Improvements, Known as 147 Div. St., Located in City of Woonsocket, R.I., 682 F. Supp. 694, 697 (D.R.I. 1988).

There is no mechanical formula for determining whether good cause exists, but courts typically consider three factors: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented. Indigo Am., Inc. v. Big Impressions, LLC, 597 F.3d 1, 3 (1st Cir. 2010); KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003); Coon, 867 F.2d at 76. Courts may also consider the proffered explanation for the default, the good faith of the parties, the amount of money involved, and the timing of the motion. Indigo Am., Inc., 597 F.3d at 3, quoting KPS & Assocs., Inc., 318 F.3d at 12. Plaintiff's Motion for Entry of Default Judgment should be denied, and the defendants' Cross-Motion to Vacate Default and Allow Defendants to Answer Complaint should be allowed for good cause.

**I.      The default was not willful, and the defendants have shown good faith in promptly taking action upon notice of the default.**

The default should be vacated, and the defendants permitted to file a responsive pleading to plaintiff's Complaint, where the default was not willful and the defendants have shown good faith in promptly taking action upon notice of the default. The defendants did not simply ignore a pending legal problem. See McKinnon v. Kwong Wah Rest., 83 F.3d 498, 504 (1st Cir. 1996) (district court did not abuse discretion in denying defendants' motion to lift the default where the record supports the district court's finding that the defendants were aware of the pending legal problem, but hoped that it "would all go away.") Rather, it is clear that the defendants acted promptly, where they immediately forwarded the Complaint on to their insurer and/or its third

6

party administrator, who they assumed would be providing a defense and filling a timely response.[16]

Further, any delay in forwarding Complaint to the insurer would not amount to bad faith or willful neglect. In Bryan v. Lark Hotels, LLC, the court found that the failure of an insurance agent to forward the complaint pursuant to her normal practice and procedure was disconcerting, but did not suggest that defendant's employees or agents acted in bad faith. Bryan v. Lark Hotels, LLC, 323 F.R.D. 116, 117 (D. Mass. 2017). In this case, upon receipt of alleged service, the defendants immediately forwarded the Complaint to their insurer or its third party administrator on the same date of receipt. See Exhibit C at ¶¶ 6-8. Therefore, it is clear that the default was not willful and the defendants' employees or representatives acted in good faith.

Additionally, the defendants acted promptly upon learning of the default by filing this Opposition and Cross-Motion to Vacate the Default as soon as practicable, as permitted by the Court's Standing Order. See Exhibit D.

**II.    Setting aside the default will not prejudice plaintiff.**

"Delay in and of itself does not constitute prejudice" in the context of a Rule 55(c) motion. Indigo Am., Inc., 597 F.3d 1, 4 (1st Cir. 2010), quoting KPS & Assocs., Inc., 318 F.3d 1, 15 (1st Cir. 2003). The issue is the "accompanying dangers," such as loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion." FDIC v. Francisco Inv. Corp., 873, F.2d 474, 479 (1st Cir. 2010).

The instant matter is in its early stages—no discovery has been conducted and no hearings have taken place. At this juncture, it is possible that discovery would not yet have commenced or had parameters set pending a Discovery Conference. The period of time that has elapsed since the

---

[16] See Exhibit C, *Affidavit of David Genereux*, at ¶ 6-8.

deadline for answering plaintiff's Complaint is less than three months, as of the filing of this Opposition. In that short period of time, the contemplated "dangers" of delay are not compromised in a way that would prejudice plaintiff. Specifically, there is no evidence that such a delay resulted in the unavailability or incompetency of necessary witnesses, and/or the loss of evidence. Nor does plaintiff make any claims of prejudice in his Motion or related affidavit, in which he simply outlines the claims and alleged resulting damages stated in his Complaint. Further, plaintiff only filed his Complaint on November 11, 2021, and Amended his Complaint on November 16, 2021, related to an alleged termination that occurred on August 18, 2020, with Arbitration Hearings having place in March 2021 and a decision just being issued in June 2021. Accordingly, the brief delay resulting from defendants' default does not prejudice plaintiff.

**III.   The defendants possess meritorious defenses against plaintiff's claims**

Demonstrating a meritorious defense "is not a particularly arduous task." Indigo Am., Inc., 597 F.3d at 4. "[A] party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Id., quoting Coon, 867 F.2d at 77; see also Conetta v. Nat'l Hair Care Centers, Inc., 236 F.3d 67, 75 (1st Cir. 2001) (noting, in discussing the meritorious defense requirement, that the defendant had an "arguable defense on some aspects of the claims against it").

This matter arises out of an alleged termination that purportedly occurred on August 18, 2020, and the resultant Complaint which includes five counts claiming violations of 42 U.S.C. § 1983, as well as Defamation, and Intentional Interference With Advantageous Business Relationship. The defendants anticipate asserting multiple defenses that are meritorious, including but not limited to:

- Qualified Immunity of individual defendants, Tencza and Fontaine, for the § 1983 claims against them;

8

- The Town of Leicester is not the employer of plaintiff, Superintendent Tenzca, or Mr. Fontaine; rather, the Leicester Public Schools, a distinct legal entity of Massachusetts General Laws, is the employer; therefore, the Town of Leicester is not a proper party to this action;

- The individual defendants and Leicester Public Schools had legitimate, non-retaliatory grounds for the employment actions taken against the plaintiff – namely, the best interests of the students of Leicester Public Schools and the statements of the plaintiff were wildly inappropriate and could be perceived as racist in the context in which they were made;

- The plaintiff had adequate post-deprivation remedies available to him – namely – a grievance process and arbitration;

- The plaintiff was not retaliated against for expressing himself on issues of "public concern;"

- The plaintiff cannot demonstrate his interest in the speech outweighs the defendants' countervailing interest of his employer in promoting the efficiency of the public services it provides through its employees. Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968) (requiring courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees").

- A municipal entity, such as the Town of Leicester and Leicester Public Schools, can only be held liable on a §1983 claim when some municipal "policy or custom" causes the alleged constitutional deprivation, Monell v. Department of Social

9

Services of the City of New York, 436 U.S. 658, 691-94 (1978) ("Local governing bodies . . . can be sued directly under §1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] . . . for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels."); and the plaintiff has failed to identify said policy or custom;

- The alleged defamatory statements were not untrue;

- The alleged defamatory statements were opinion;

- As public employers of the plaintiff, the individual defendants are entitled to a conditional privilege for the statements made and, thus, plaintiff must prove the alleged defamatory statements were made with "actual malice." The Massachusetts Supreme Judicial Court has held that a public official is conditionally privileged to make otherwise defamatory statements while performing public duties, as long as the official does not act with malice. Mulgrew v. Taunton, 410 Mass. 631, 635 (1991); see also Exec. Bd. of Local 403 of the Int'l Bhd. of Police Officer v. John Barrett, III,  9 Mass. L. Rep. 212 (J. Volterra) (1999) (defamation suit against Mayor of North Adams dismissed at summary judgment stage because plaintiff could not show actual malice in statements made in public forum);

- To establish claims of intentional interference with an advantageous business relationship, the plaintiff must prove, inter alia, that the defendants, Tenaya, and Fontaine, acted with improper motive or means. United Truck Leasing Corp. v.

10

Geltman, 406 Mass. 811, 815-16 (1990).  "[I]mproper conduct, beyond the interference itself, is 'an element both in the proof of intentional interference with performance of a contract . . . and in the proof of intentional interference with a prospective contractual relationship.'"  Hunneman Real Estate Corp. v. Norwood Realty, Inc., 54 Mass.App.Ct. 416, 427 (2002), quoting from United Truck Leasing Corp., 406 Mass. at 816.  When the defendant is a public official, like Tencza and Fontaine, the improper conduct must rise to the level of "actual malice."  Tobin v. Goggins, 17 Mass.App.Ct. 996, 997 (1984) (in intentional interference case against public official, plaintiff must also show "that the interference was done in bad faith or maliciously");

- Lack of a violation of plaintiff's constitutional violation rights,

- Lack of proximate cause;

- Lack of Service of Process;
    - In particular, Mr. Fontaine was not served in person nor was he served at his last known address; and
    - The Town of Leicester was not served through its Treasurer, Melanie Jackson.

- Under the Massachusetts Tort Claims Act, M.G.L. c. 258 et seq., claims of defamation, libel and slander are barred against municipal entities such as the Town of Leicester and Leicester Public Schools under M.G.L. c. 258, §10(c); therefore, as a matter of law, Count III, Defamation against the municipal entities should be dismissed; and

11

- Where a collective bargaining agreement provides grievance procedures, the remedies specified therein must be exhausted before an employee can resort to common law actions in the courts. O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 695 (1996); Azzi v. Western Elec. Co., 19 Mass.App.Ct. 406, 408 (1985); Balsavich v. Local 170, Int'l Bhd. of Teamsters, 371 Mass. 283, 286 (1976) ("Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct to court for redress against the employer"); thus, plaintiff had an adequate remedy through arbitration to provide any relief and damages he seeks from the defendants.

The defendants will supply further evidentiary proof of the merit of said defenses upon a request from the Court, if necessary.

## **CONCLUSION**

WHEREFORE, the defendants, for the reasons set forth above, respectfully request that this Court deny the plaintiff's Motion for Default Judgment Against Defendants, vacate the default entered against it on December 15, 2021, pursuant to Fed. R. Civ. P. 55(c), and permit the defendants to file a Responsive Pleading to the plaintiff's Complaint within seven (7) days of the Court allowing the instant Cross-Motion.

Respectfully submitted,

The Defendants,

TOWN OF LEICESTER, BY AND
THROUGH ITS TREASURER,
MELANIE JACKSON;
LEICESTER PUBLIC SCHOOLS,
 BY AND THROUGH ITS
SUPERINTENDENT, MARILYN TENCZA;
MARILYN TENCZA; AND
CHRISTOPHER FONTAINE
By Their Attorneys,

*/s/ Peter Monaco*

Gareth W. Notis, BBO #637814
gnotis@morrisonmahoney.com
Peter A. Monaco, BBO #681918
pmonaco@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone:    617-439-7500
Fax:       617-342-4821

13

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 9, 2022

 /s/ *Peter Monaco*

100953701